IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.    RACHELLA J. OGLESBY,<br>      An individual,<br>             Plaintiff,<br>v.<br>2. BIZJET INTERNATIONAL SALES &<br>    SUPPORT, INC., a domestic corporation,<br>             Defendant. | Case No. 16-CV-08-CVE-PJC<br><br>JURY TRIAL DEMANDED<br><br>ATTORNEY'S LIEN CLAIMED<br>FOR THE FIRM |

## COMPLAINT

**COMES NOW** the Plaintiff, Rachella Oglesby, ("Plaintiff") by and through her attorney of record Charles C. Vaught of the firm *Armstrong & Vaught, P.L.C.* and hereby submits the following Complaint against Defendants Bizjet International Sales & Support, Inc. ("Defendant") and hereby states and alleges as follows:

## JURISDICTION AND VENUE

1. Jurisdiction is invoked pursuant to 28 U.S.C. §1343(a)(4) and 28 U.S.C. §1331, and the state law claims pursuant to the doctrine of pendent jurisdiction.

2. This action arises under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.*, and the common law of the State of Oklahoma.

3. Declaratory and equitable relief are sought pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202, and compensatory and punitive damages are sought pursuant to 42 U.S.C. §§ 2000e, *et seq*.

4. Costs and attorneys' fees may be awarded pursuant to Rule 54 of the Federal Rules of Civil and the above statutes.

5. This Court has jurisdiction over the parties and the subject matter of this action, and this action properly lies in the Northern District of Oklahoma, pursuant to 28 U.S.C. §1391(c), because the claims herein arose in this judicial district.

## PARTIES

6. Plaintiff was employed by Defendant as an Avionic Tech from approximately September 9, 2011 to March 3, 2014.

7. Plaintiff is a member to a protected class, to wit: a female.

8. Defendant was and is now existing under the laws of the State of Oklahoma and maintains a facility in Tulsa, Oklahoma where Plaintiff was employed during all relevant periods.

9. In conformance with Title VII statutory prerequisites, Plaintiff submitted pre-charge information to the United States Equal Employment Opportunity Commission ("EEOC"). Subsequently, Plaintiff submitted a Charge of Discrimination to the EEOC. The EEOC completed its investigation and issued a Notice of Right to Sue on October 27, 2015 (attached hereto as Exhibit A and hereby incorporated by reference as though fully set forth herein).

## OPERATIVE FACTS

10. Plaintiff was employed by Bizjet as an Avionic Tech from September 9, 2011 to March 3, 2014. Plaintiff was the only female in the avionics department. Almost immediately upon beginning her employment, Plaintiff experienced sexual harassment and gender discrimination. Examples of the sexual harassment are as follows:

   a. Plaintiff's supervisor, Joe Hensley asked her to go fishing with him on two occasions, to which Plaintiff refused.

b. One day Alex LNU, Mike McMillan and Leonard Abby were talking in depth about a girl in a strip club asking them to shave her. They talked in detail about what they would like to do to her.

c. The men made the comments that "you can't say certain things around a female in this shop," "there's a female in the shop, quit talking," and "I can go wherever I want and I can say whatever I want and if certain people in the shop can't take it, they need to leave our shop."

d. Plaintiff was sexually harassed by Bill LNU, a contractor, who made a comment that he would like to bed her and he bet it had been a long time since Plaintiff felt a hard dick.

e. One of the inspectors, Gary LNU, would not stamp the work cards for the guys in the shop, so Mr. Hensley asked Plaintiff to stand up straight, flirt and smile at the inspector to get him to sign off on the work. Plaintiff told him that was disgusting.

f. Not long after that incident, David Lamb started announcing to the shop that he had gotten laid the night before and proceeded to describe his night in detail. Mr. Lamb made sure everyone knew when he had sex by bragging about it in the shop the next morning.

g. One day, Mr. Lamb was describing how a girl riding in his car straddled him while he was driving and stated that she could "work it."

h. Many times after that, Mr. Lamb would make comments to her which insinuated that Plaintiff's son was having sex/getting laid because he was at the age where he is "wanting to get it wet and sleep with all he can." Plaintiff repeatedly asked Mr.

      Lamb to stop making the comments. Plaintiff even went to Mr. Hensley over the comments but the comments continued.

i. On another occasion, Mr. Lamb was on the floor with his head between Mr. Hensley's legs showing his supervisor and the other guys in the shop a replay of the lap dance he had received the night before.

j. Another time, Mr. Lamb said he woke up with two girls in his bed and the girls started his morning "just right."

k. Constantly, Mr. Lamb would put his nipple in people's faces and say, "come on, you know that you want to suck it" and he would come up behind people and make humping motions like he was having sex.

l. In the summer of 2013, Mr. Hensley admitted to Plaintiff that he had searched for her on Facebook. He stated that he thought Plaintiff was pretty and he put her picture on his phone so it would appear any time Plaintiff had to text or call him about work.

m. On May 16, 2013, at approximately 9:00 p.m., Mr. Hensley sent Plaintiff a text asking how she was feeling and told her to take a hot shower.

n. One day, Plaintiff entered the shop and observed that Mr. Lamb was jumping up and down, acting as if his penis was flopping, and yelled for Plaintiff to notice while the guys and crew chief were watching and laughing. Plaintiff very loudly yelled to the men that their behavior was inappropriate and had to stop.

o. Many times, Mr. Hensley, the supervisor would be watching and laughing while witnessing this behavior.

11. Plaintiff went to her supervisor, Mr. Hensley, on several occasions and stated that the sexual behavior was inappropriate. Plaintiff told him that she did not like the way the men spoke to her about sexual matters. Mr. Hensley's response was that they were just playing and did not mean any harm.

12. Also, Plaintiff reported the sexual harassment to Michelle Castle in HR in early 2012, and Ms. Castle offered to make a scene in the shop to address the sexual harassment.

13. Plaintiff complained to Jeremy Knots, lead, about the contractor making the comment about it being a long time since she had felt a "hard dick", but was told to suck it up and that men just talk that way. Of course nothing was done until the same contractor took an inappropriate picture of an office lady and forwarded it to a co-worker.

14. Plaintiff was discriminated against based upon her gender, female as follows:

   a. Plaintiff was never allowed to work Saturday, Sunday or the holidays. One time Plaintiff signed up to work on July 4th and Mr. Hensley took down the signup sheet, stating no one was working. Upon returning to work, Plaintiff discovered that her male co-workers were allowed to work that holiday.

   b. On May 9, 2012, Plaintiff was given an introductory action write up for productivity and quality of work by Michelle Castle in HR after she reported to her about the inappropriate behavior in the shop. Plaintiff's male co-workers with productivity and quality of work issues were not subjected to discipline.

   c. Subsequently, on May 12, 2012, Mr. Hensley suggested that Plaintiff be moved to the other side of the hanger to do the tear down project, to allow Mr. Hensley and the other men to cool down.

d. Plaintiff was told this was not a punishment; however, Plaintiff was also given a secondary action form and written up for quality and low productivity. Plaintiff's male co-workers with productivity and quality of work issues were not subjected to discipline.

e. After a few weeks, Ms. Castle informed Plaintiff that they had created a job for her inputting part numbers in the log book, and later a computer, back on the other side of the hangar. They did not provide Plaintiff with a chair or desk. When Plaintiff asked for a chair and desk to work from, Mr. Knots threw a file cabinet at her. Plaintiff reported this to Ms. Castle, but she stated that it did not sound like something Mr. Knots would do.

f. Plaintiff was not allowed to do testing or do the flight checks.

g. New employees with less seniority were promoted to zone leaders and Plaintiff was never considered for those positions.

h. Mr. Hensley made the statement that people were talking badly about Plaintiff and it was making its way to HR, which was not true, in an effort to keep Plaintiff fearful of her job.

i. The crew chiefs would not assign Plaintiff any work.

j. Subsequently, Mr. Hensley said work was slow and forced Plaintiff to take off nine days. Upon her return, Plaintiff discovered that her male co-workers were allowed to work and did not have to take time off.

k. Plaintiff found out that some of the men had been evaluated and given raises, so numerous times Plaintiff inquired of Mr. Hensley why she had never received an

evaluation. He stated that Plaintiff was not present at the time that they did the evaluations, which was not true.

l. On August 20, 2013, Plaintiff asked Mr. Lischinsky about her evaluations and raises. He stated that Plaintiff would be evaluated in October. Since Plaintiff did not receive an evaluation, Plaintiff went to Michelle Castle in HR to inquire about her evaluations and raises. Ms. Castle was argumentative, but said Plaintiff would be evaluated on November 4, 2013.

m. On November 25, 2013, Plaintiff received a copy of her evaluation, which was unfavorable. After this, Plaintiff still continued to be given grunt work. On several occasions, the men would cuss or yell at Plaintiff in front of everyone and her supervisor allowed the men to treat her inappropriately.

n. On February 19, 2014, Plaintiff did an incorrect crimping and immediately sef-disclosed this to her supervisor. On February 24, 2014, Plaintiff was given a write up for the incident even though an entire plane was incorrectly crimped in another hangar and none of the crew were written up. Plaintiff explained to Mr. Lischinsky that the write up was unfair and unjust. Subsequently, Michelle Castle gave Plaintiff a three day suspension, stating Plaintiff had falsified documentation, and instructed her to call after the suspension. Plaintiff then advised Ms. Castle that she had contacted the EEOC back in June 2013 with regard to sexual harassment and gender discrimination.

15. Plaintiff was retaliated against for reporting the sexual harassment, gender discrimination and contacting the EEOC as follows:

    a. On May 9, 2012, Plaintiff was given an introductory action write up for productivity and quality of work by Michelle Castle in HR after Plaintiff reported to her about the inappropriate behavior in the shop. Plaintiff's male co-workers with productivity and quality of work issues were not subjected to discipline.

    b. Subsequently, on May 12, 2012, Mr. Hensley suggested that Plaintiff be moved to the other side of the hangar to do the tear down project, to allow Mr. Hensley and the other men to cool down.

    c. Plaintiff was told this was not a punishment; however, Plaintiff was also given the secondary action form and written up for quality and low productivity. Plaintiff's male co-workers with productivity and quality of work issues were not subjected to discipline.

    d. After a few weeks, Ms. Castle informed Plaintiff that they had created a job for her inputting part numbers in the log book, and later a computer, back on the other side of the hanger. They did not provide Plaintiff with a chair or desk. When Plaintiff requested a desk and chair to work from, Mr. Knots threw a file cabinet at her. Plaintiff reported this to Ms. Castle but she stated that it did not sound like something Mr. Knots would do.

    e. Plaintiff kept getting moved around on projects and was not allowed to work on projects that Plaintiff had a lot of experience doing.

16. On March 3, 2014, Plaintiff called Ms. Castle, who informed her that she was terminated because she had contacted the EEOC about the sexual comments and gender discrimination. Ms. Castle said her first priority was to the company and that they were going to let the

attorneys fight it out. She stated she was protecting the company's interest and thought it best to leave the EEOC complaint alone.

17. Plaintiff feels that she has been sexually harassed and discriminated against based on her gender, in violation of Title VII of the Civil Rights Act.

18. Due to the reporting of sexual harassment and discrimination, Plaintiff believes that she has been retaliated against and wrongfully terminated by Bizjet, in violation of Title VII of the Civil Rights Act.

## FIRST CLAIM FOR RELIEF
### (SEXUAL HARASSMENT IN VIOLATION OF TITLE VII)

19. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein

20. By and through, but not limited to, the events described above, Plaintiff's terms and conditions of employment were adversely affected, and a hostile work environment was created, due to the on-going sexual harassment directed toward Plaintiff.

21. By and through, but not limited to, the actions described above, the Defendant has violated Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C.§§ 2000e, *et seq.*

22. As a direct and proximate result of said actions by Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer lost wages, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

23. Defendant's actions were willful and done with reckless indifference to Plaintiff's rights, thus warranting the award of punitive damages to Plaintiff.

24. Plaintiff has been injured by the sexual harassment she was subjected to and is entitled to compensatory and punitive damages and any other damages allowed under Title VII of the Civil Rights Act of 1964 and 1991.

**WHEREFORE**, Plaintiff prays for a declaration that the conduct engaged in by the Defendant was in violation of Plaintiff's rights; for an award to Plaintiff for equitable relief of lost wages; compensatory and punitive damages, including emotional distress, mental anguish, and humiliation, in an amount in excess of One Hundred Thousand Dollars ($100,000.000); costs and expenses, including reasonable attorneys' fees as provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment and for any such other legal or equitable relief this Honorable Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (RETALIATION IN VIOLATION OF TITLE VII)

25. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.
26. Plaintiff followed the proper procedures as an employee of Defendant in exercising her federally protected right to complain of the sexual harassment she was subjected to as an employee in Defendant's employ.
27. Plaintiff reported the discrimination she was subjected to as an employee of Defendant to both her immediate supervisor and Defendant's Human Resources Department.
28. As a direct result of Plaintiff's complaint, Defendant altered the terms, conditions and/or privileges of her employment by, among other retaliatory acts, limiting the hours Plaintiff could work and terminating her employment.
29. As a direct result of Plaintiff's complaint, Defendant retaliated against her for exercising her federally protected rights to report the sexual harassment she was subjected to in the workplace.

**WHEREFORE**, Plaintiff prays for a declaration that the conduct engaged in by the Defendant was in violation of Plaintiff's rights; for an award to Plaintiff for equitable relief of lost wages; compensatory and punitive damages, including emotional distress, mental anguish, and humiliation, in an amount in excess of One Hundred Thousand Dollars ($100,000.000); costs and expenses, including reasonable attorneys' fees as provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment and for any such other legal or equitable relief this Honorable Court deems just and proper.

### THIRD CLAIM FOR RELIEF
### (GENDER DISCRIMINATION IN VIOLATION OF TITLE VII)

30. Plaintiff hereby incorporates the preceding paragraphs as though fully.

31. As a member of a protected class, to wit: female, Plaintiff is protected by the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

32. The disparate treatment of Plaintiff by Defendant and its employees and/or agents was a direct result of discrimination on the basis of her gender as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

33. Plaintiff was unfairly treated and that the motivating reason for this treatment was based on her gender, as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

34. Defendant ratified the acts of its agents and employees by failing to take remedial action upon notice of the circumstances or by allowing the acts to occur after receiving actual or constructive notice of those acts;

35. The conduct complained of constitutes illegal gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

**WHEREFORE**, Plaintiff prays for a declaration that the conduct engaged in by Defendant was in violation of Plaintiff's rights; for an award to Plaintiff for equitable relief of back salary; compensatory and punitive damages, including emotional distress, mental anguish, and humiliation, in an amount in excess of One Hundred Thousand Dollars($100,000.000); costs and expenses, including reasonable attorney's fees as provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment and for any such other legal or equitable relief this Honorable Court deems just and proper.

### FOURTH CLAIM FOR RELIEF
### (HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII)

36. Plaintiff hereby incorporates the preceding paragraphs as though fully.

37. Plaintiff was subjected to discriminatory conduct, and that the motivating reason for this treatment was based on her gender, as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.;

38. Said conduct has had the purpose or effect of unreasonably interfering with Plaintiff's work performance;

39. Said conduct created an intimidating and hostile working environment for Plaintiff;

40. Said conduct was repeated frequently while Plaintiff was employed by Defendant;

41. Defendant ratified the acts of its agents and employees by failing to take remedial action upon notice of the circumstances by Plaintiff or by allowing the acts to occur after receiving actual or constructive notice of those acts.

**WHEREFORE**, Plaintiff prays for a declaration that the conduct engaged in by Defendant is in violation of Plaintiff's rights; for an award to Plaintiff for equitable relief of back salary; compensatory and punitive damages, including emotional distress, mental anguish, and humiliation, in an amount in excess of One Hundred Thousand Dollars($100,000.000); costs and expenses, including reasonable attorney's fees as provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment and for any such other legal or equitable relief this Honorable Court deems just and proper.

### FIFTH CLAIM FOR RELIEF
### (NEGLIGENT SUPERVISION)

42. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.
43. That Defendant knew or should have known that Defendant's agents and employees had a propensity for sexually harassing employees, as demonstrated by the observations of its management and/or supervisory employees and Plaintiff's prior reports of same.
44. That at the time Defendant's employees were sexually harassing Plaintiff, Defendant had reason to believe that the employees would create an undue risk of harm to others.
45. That Defendant failed to act upon this belief.
46. That the Plaintiff was injured because of Defendant's failure to act.
47. That Plaintiff's injuries are a direct and proximate result of Defendant's failure to act.

**WHEREFORE**, Plaintiff prays for a declaration that the conduct engaged in by the Defendant was in violation of Plaintiff's rights; for an award to Plaintiff for equitable relief of lost wages; compensatory and punitive damages, including emotional distress, mental anguish, and humiliation, in an amount in excess of One Hundred Thousand Dollars ($100,000.000);

costs and expenses, including reasonable attorneys' fees as provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment and for any such other legal or equitable relief this Honorable Court deems just and proper.

        Respectfully Submitted,

        ARMSTRONG & VAUGHT, P.L.C.

        */s/ Charles C. Vaught*

        **Charles C. Vaught, OBA #19962**
        2727 E. 21st Street, Suite 505
        Tulsa, Oklahoma  74114
        (918) 582-2500 Telephone
        (918) 583-1755 Fax
        **Attorney for Plaintiff**